UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LIONRA TECHNOLOGIES LTD.,<br><br>      Plaintiff,<br><br>  v.<br><br>CISCO SYSTEMS, INC.,<br><br>      Defendant. | Case No. 2:23-cv-207<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT
AGAINST CISCO SYSTEMS, INC.**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Lionra Technologies Limited ("Plaintiff" or "Lionra") makes the following allegations against Defendant Cisco Systems, Inc. ("Defendant" or "Cisco"):

**INTRODUCTION**

1. This complaint arises from Cisco's unlawful infringement of the following United States patents owned by Plaintiff, which relate to improvements in secure computing systems: United States Patent Nos. 9,264,441 ("the '441 Patent") and 7,623,518 ("the '518 Patent") (collectively, the "Asserted Patents").

**PARTIES**

2. Plaintiff Lionra Technologies Limited is a private company limited by shares organized and existing under the laws of Ireland, with its principal place of business at The Hyde Building, Suite 23, The Park, Carrickmines, Dublin 18, Ireland. Lionra is the sole owner by

assignment of all rights, title, and interest in the Asserted Patents, including the right to recover damages for past, present, and future infringement.

3. On information and belief, Defendant Cisco Systems, Inc. is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, California 95134.  Cisco is registered to do business in the State of Texas and may be served through its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Cisco in this action because Cisco has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Cisco would not offend traditional notions of fair play and substantial justice.  Cisco maintains several places of business within the State, including at 2250 East President George Bush Turnpike, Richardson, TX 75082. Cisco, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the Asserted Patents.  Cisco is registered to do business in the State of Texas, and has appointed as their registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701, for service of process.

6. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). Cisco is registered to do business in Texas, and upon information and belief, Cisco has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents. Cisco has regular and established places of business in this District, including at 2250 East President George Bush Turnpike, Richardson, TX 75082.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 9,264,441

7. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

8. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,264,441, titled "System and method for securing a network from zero-day vulnerability exploits." The '441 Patent was duly and legally issued by the United States Patent and Trademark Office on February 16, 2016. The '441 Patent is valid and enforceable. A true and correct copy of the '441 Patent is attached hereto as Exhibit 1.

9. Cisco makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Cisco's Secure Endpoint (formerly AMP for Endpoints) running on Private and Public Cloud Appliance (the "Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '441 Patent. Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

10. The Accused Products satisfy all claim limitations of one or more claims of the '441 Patent. A claim chart comparing exemplary independent claim 11 of the '441 Patent to representative Accused Products is attached as Exhibit 2.

11. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Cisco has injured Plaintiff and is liable for infringement of the '441 Patent pursuant to 35 U.S.C. § 271(a).

12. Cisco also knowingly and intentionally induces infringement of one or more claims of the '441 Patent in violation of 35 U.S.C. § 271(b). At least as of the filing and service of this complaint, Cisco has knowledge of the '441 Patent and the infringing nature of the Accused Products through, for example, the '441 Patent claim chart served therewith. Despite this knowledge of the '441 Patent, Cisco continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibit 2) to use the Accused Products in ways that directly infringe the '441 Patent. For example, Cisco advertises the AMP system performance and security monitoring functionality:

> The Cisco® Advanced Malware Protection (AMP) Private Cloud Appliance is an on-premises, private cloud deployment capable of supporting Cisco AMP for Networks, AMP for Email, AMP for Web Security, and AMP for Endpoints. It delivers threat protection using file reputation, malware analysis, continuous monitoring of all file activity, and security intelligence stored locally. The appliance satisfies stringent privacy mandates without compromising the ability to leverage the power of collective security intelligence and provides network and endpoint protection across small and large enterprises.

*See* Ex. 3 (https://www.cisco.com/c/en/us/products/collateral/security/fireamp-private-cloud-virtual-appliance/datasheet-c78-742267.html). Further, Cisco provides its users with instructions explaining how to integrate the Advanced Malware Protection (AMP) Virtual Private Cloud and the Threat Grid Appliance. *See* Ex. 4 (https://www.cisco.com/c/en/us/support/docs/security/amp-virtual-private-cloud-appliance/217209-integration-of-amp-virtual-private-cloud.html#anc0). Cisco provides these instructions, user manuals, and other materials knowing and intending (or

with willful blindness to the fact) that its customers and end users will commit these infringing acts. Cisco also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '441 Patent, thereby specifically intending for and inducing its customers to infringe the '441 Patent through the customers' normal and customary use of the Accused Products.

13. Cisco has also infringed, and continues to infringe, one or more claims of the '441 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '441 Patent, are especially made or adapted to infringe the '441 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. At least as of the filing and service of this complaint, Cisco has knowledge of the '441 Patent and the infringing nature of the Accused Products through, for example, the '441 Patent claim chart served therewith. Cisco has been, and currently is, contributorily infringing the '441 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, Cisco's Secure Endpoint (formerly AMP for Endpoints) constitute a material part of the inventions claimed in the '441 Patent, are especially made or adapted to infringe the '441 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 2.

14. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. §287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '441 Patent during the relevant time period or were not required to mark during the relevant time period.

15. As a result of Cisco's direct infringement of the '441 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Cisco's

infringement, but in no event less than a reasonable royalty for the use made of the invention by Cisco, together with interest and costs as fixed by the Court.

16. As a result of Cisco's indirect infringement of the '441 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Cisco's infringement, but in no event less than a reasonable royalty for the use made of the invention by Cisco, together with interest and costs as fixed by the Court, accruing as of the time Cisco obtained knowledge of the '441 Patent.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 7,623,518

17. Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

18. Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 7,623,518, titled "Dynamic access control lists."  The '518 Patent was duly and legally issued by the United States Patent and Trademark Office on November 24, 2009.  The '518 Patent is valid and enforceable. A true and correct copy of the '518 Patent is attached hereto as Exhibit 5.

19. Cisco makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Cisco Secure Network Servers 3415, 3495, 3715, 3755, and 3795 running Identity Services Engine (ISE) and ISE Virtual appliances in combination with Cisco Catalyst platforms (e.g., 3650, 3850, 9300, 9500, 9800) (the "Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '518 Patent. Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

20. The Accused Products satisfy all claim limitations of one or more claims of the '518 Patent. A claim chart comparing exemplary independent claim 15 of the '518 Patent to representative Accused Products is attached as Exhibit 6.

21. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Cisco has injured Plaintiff and is liable for infringement of the '518 Patent pursuant to 35 U.S.C. § 271(a).

22. Cisco also knowingly and intentionally induces infringement of one or more claims of the '518 Patent in violation of 35 U.S.C. § 271(b). At least as of the filing and service of this complaint, Cisco has knowledge of the '518 Patent and the infringing nature of the Accused Products through, for example, the '518 Patent claim chart served therewith. Despite this knowledge of the '518 Patent, Cisco continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibit 6) to use the Accused Products in ways that directly infringe the '518 Patent. For example, Cisco advertises the switching capabilities of the exemplary SNS-3715 with Catalyst 9300:

Cisco® Catalyst® 9300 Series Switches are the foundation of Cisco's next-generation enterprise-class access layer solutions. These fixed, stackable switches are available in various configurations, including data, Universal Power over Ethernet (UPoE), and Multigigabit models. They deliver exceptional table scales (MAC/route/ACL) and buffering capabilities for enterprise applications. The Cisco Catalyst 9300 Series platform delivers up to 1760 Gbps of switching capacity in standalone mode and 14 Tbps when stacked as eight-member switches, with up to 3.8 Billion packets per second (Bpps) of forwarding performance. The platform's stacking capability provides a flexible, pay-as-you-grow model as well as simplicity in the ability to manage multiple switches as a single logical switch. The switches provide four kinds of models for different access layer requirements. One provides nonblocking 1 Gigabit Ethernet over Cisco Universal Power over Ethernet (Cisco UPOE® and UPOE+®) capable copper ports with additional support for 10- and 100-Mbps speeds. The second one supports nonblocking Multigigabit speeds varying from 100 Mbps to 1, 2.5, 5, and 10 Gbps over Cisco UPOE/UPOE+ capable copper port switches. The third one supports nonblocking 1, 10, 25 Gbps over the fiber ports. The platform also offers optional uplink modules that support nonblocking 100 Gigabit Ethernet (100G) Quad Small Form-Factor Pluggable (QSFP+),40 Gigabit Ethernet (40G) Quad Small Form-Factor Pluggable (QSFP+), 25G Small Form-Factor Pluggable 28 (SFP28),10G Enhanced Small Form-factor Pluggable (SFP+), and 1G Small Form-Factor Pluggable (SFP) to meet diverse campus needs when connecting to aggregation or core devices. The fourth one supports nonblocking Multigigabit speeds varying from 100 Mbps to 1, 2.5, 5, and 10 Gbps over Cisco UPOE capable copper port switches in shallow form factor of less than 13.2 inches in depth with fixed uplink modules.

This white paper provides an architectural overview of the Cisco Catalyst 9300 Series chassis, including system design, power, cooling, and storage options.

*See* Ex. 7 (https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9300-series-switches/nb-06-cat9300-architecture-cte-en.html). Cisco further advertises that packets are forwarded based on the dynamic access link:



**Figure 17.**

Cisco Catalyst 9300 Series high-level block diagram

*Id.* In addition, Cisco provides users with instructions on how to deploy Cisco's Identity Services Engine (ISE) for wired network access, for example. *See* Ex. 8 (https://community.cisco.com/t5/security-knowledge-base/ise-secure-wired-access-prescriptive-deployment-guide/ta-p/3641515#toc-hId-1185473819). Cisco provides these instructions, user manuals, and other materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Cisco also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '518 Patent, thereby specifically intending for and inducing its customers to infringe the '518 Patent through the customers' normal and customary use of the Accused Products.

23. Cisco has also infringed, and continues to infringe, one or more claims of the '518 Patent by selling, offering for sale, or importing into the United States, the Accused Products,

knowing that the Accused Products constitute a material part of the inventions claimed in the '518 Patent, are especially made or adapted to infringe the '518 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  At least as of the filing and service of this complaint, Cisco has knowledge of the '518 Patent and the infringing nature of the Accused Products through, for example, the '518 Patent claim chart served therewith.  Cisco has been, and currently is, contributorily infringing the '518 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, Cisco's Cisco Secure Network Servers 3415, 3495, 3715, 3755, and 3795 running Identity Services Engine (ISE) and ISE Virtual appliances and/or Cisco Catalyst platforms (e.g., 3650, 3850, 9300, 9500, 9800) constitute a material part of the inventions claimed in the '518 Patent, are especially made or adapted to infringe the '518 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 6.

24. On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. §287 during the relevant time period because Plaintiff, its predecessors, and any licensees did not make, offer for sale, or sell products that practice(d) the '518 Patent during the relevant time period or were not required to mark during the relevant time period.

25. As a result of Cisco's direct infringement of the '518 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Cisco's infringement, but in no event less than a reasonable royalty for the use made of the invention by Cisco, together with interest and costs as fixed by the Court.

26. As a result of Cisco's indirect infringement of the '518 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Cisco's infringement, but in no event less than a reasonable royalty for the use made of the invention by

Cisco, together with interest and costs as fixed by the Court, accruing as of the time Cisco obtained knowledge of the '518 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Cisco has infringed, either literally and/or under the doctrine of equivalents, the '441 and '518 Patents;

b. A judgment and order requiring Cisco to pay Plaintiff its damages (past, present, and future), costs, expenses, and pre-judgment and post-judgment interest for Cisco's infringement of the '441 and '518 Patents;

c. A judgment and order requiring Cisco to pay Plaintiff compulsory ongoing licensing fees, as determined by the Court in equity.

d. A judgment and order requiring Cisco to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest and compensation for infringing products released after the filing of this case that are not colorably different from the accused products;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Cisco; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

| | |
|---|---|
| Dated: May 9, 2023 | Respectfully submitted,<br><br>*/s/ Brett E. Cooper*<br>Brett E. Cooper (NY SBN 4011011)<br>bcooper@bc-lawgroup.com<br>Seth Hasenour (TX SBN 24059910)<br>shasenour@bc-lawgroup.com<br>Drew B. Hollander (NY SBN 5378096)<br>dhollander@bc-lawgroup.com<br>Jonathan Yim (NY SBN 5324967)<br>jyim@bc-lawgroup.com<br><br>BC LAW GROUP, P.C.<br>200 Madison Avenue, 24th Floor<br>New York, NY 10016<br>Phone: 212-951-0100<br><br>***Attorneys for Plaintiff Lionra Technologies Limited*** |